Filed 9/16/25  Ashford v. Midpeninsula Regional Open Space District CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PAMELA ASHFORD,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>MIDPENINSULA REGIONAL OPEN SPACE DISTRICT,<br><br>  Defendant and Respondent. | H051856<br>(Santa Clara County<br> Super. Ct. No. No. 22CV407741) |

For several years, appellant Pamela Ashford was the interim manager of the Bear Creek Stables on a month-to-month lease assigned to her by respondent Midpeninsula Regional Open Space District (Midpeninsula).  The Bear Creek Stables are part of Midpeninsula's Bear Creek Redwoods Open Space Preserve.  When Midpeninsula issued a request for proposals (RFP) for a concessionaire to operate the Bear Creek Stables, Ashford submitted a proposal.  However, Midpeninsula did not select Ashford and instead awarded the concessionaire contract to the candidate ranked first in the selection process, Chaparral Country Corporation (Chaparral).

Ashford subsequently filed the instant action against Midpeninsula, which demurred to all causes of action in the first amended complaint and

the second amended complaint on the primary ground that Ashford had failed to state facts sufficient for any cause of action. The trial court sustained the demurrers without leave to amend as to the cause of action for violation of the Ralph M. Brown Act (Brown Act) (Gov. Code, § 54950 et seq.[1]) in the first amended complaint, and also sustained the demurrers without leave to amend as to the causes of action in the second amended complaint for retaliatory eviction, violation of the California Public Records Act (CPRA) (§ 7920 et seq.), violation of the constitutional right to equal protection, violation of the constitutional right to due process, conversion, replevin, and common counts. The January 9, 2024 judgment dismissed the second amended complaint.

On appeal, Ashford contends that the trial court erred in sustaining the demurrers without leave to amend and dismissing the second amended complaint because she alleged facts sufficient for all causes of action in the complaint. For the reasons stated below, we decide the trial court did not err and affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. *Facts*

Our summary of the facts is drawn from the allegations of the complaints and the requests for judicial notice filed below. In reviewing a ruling sustaining a demurrer without leave to amend, we assume the truth of the properly pleaded factual allegations and the matters properly subject to judicial notice. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Midpeninsula acquired the Bear Creek Stables in 1999 when it added acreage to the Bear Creek Redwoods Open Space Preserve. The Bear Creek

---

[1] All further unspecified statutory references are to the Government Code.

Stables has been used as an equestrian boarding and training facility for decades and is allowed to operate in Santa Clara County under a legal nonconforming use designation.

In 2015 Midpeninsula's board of directors approved the assignment of the Bear Creek Stables month-to-month rental agreement to Ashford as the interim manager of the stables. In 2017 Midpeninsula's board of directors approved the Bear Creek Redwoods Preserve Plan, which designated the Bear Creek Stables for continued equestrian use.

In February 2022, Midpeninsula issued an RFP for a concessionaire to provide horse stable management and equestrian programs at the Bear Creek Stables under a preliminary two-year term, followed by two, five-year extensions. The RFP included a two-phase selection process. Phase I required submission of a proposal that included information such as a resume and project team information. Phase II included candidate interviews and a mandatory property tour. The RFP stated that the contract to operate the Bear Creek Stables would be awarded by Midpeninsula to " 'the most responsive and responsible applicant, based [on] information received through submittals, interviews, and results of site visits.' "

Ashford submitted a response to Midpeninsula's RFP that satisfied all of the Phase I criteria. When Phase II was completed, an evaluation committee, consisting of three internal members and three external members, ranked Ashford second of the three finalists and recommended the selection of Chaparral, the candidate ranked first.

Midpeninsula's board of directors awarded the contract for a horse stable concessionaire to operate the Bear Creek Stables to Chaparral during the board meeting held on August 24, 2022. Midpeninsula demanded that

3

Ashford vacate the Bear Creek Stables by December 31, 2022, after serving her with a 30-day notice to terminate her lease on December 23, 2022.

When Ashford did not vacate the Bear Creek Stables voluntarily, Midpeninsula filed an unlawful detainer action against her in which some property issues were resolved by a May 19, 2023 stipulation and order. (*Midpeninsula Regional Open Space District v. Ashford* (Super. Ct. Santa Clara County, 2023, No. 23CV410606); hereafter, unlawful detainer action). The parties' stipulation in the unlawful detainer action included Ashford's agreement to remove her personal property, including her equestrian fencing, and that "[a]ny of [Ashford]'s personal property that remains at the [s]ubject [p]roperty after June 15, 2023, shall be deemed [Midpeninsula]'s property." The stipulation further provided that "[t]he [c]ourt shall retain jurisdiction over the parties to enforce the [s]tipulation herein until performance in full of its terms pursuant to Code of Civil Procedure section 664.6."

According to Ashford, Midpeninsula should not have selected Chaparral as the new concessionaire for the Bear Creek Stables because Chapparal's submission did not meet the criteria established in the RFP in several respects, including Chaparral's failure to submit a complete financial plan and to satisfy insurance requirements. Midpeninsula also allegedly did not consider negative information about Chapparal. Further, Ashford alleged that Midpeninsula's decision making process was flawed, improperly relied on inaccurate information and ex parte communications with other bidders and violated the Ralph M. Brown Act (Brown Act) (§ 54950 et seq.) because a board member discussed Ashford's proposal at a public meeting with off-agenda items.

4

B. *Procedural Background*

   1. First Amended Complaint

Ashford filed her original complaint on November 23, 2022, naming Midpeninsula as the defendant, then filed her verified first amended complaint on February 16, 2023, after receiving correspondence from Midpeninsula asserting defects in the original complaint. The first amended complaint includes causes of action for (1) violation of the open meeting provisions of the Brown Act (§ 54954.3, subd. (a)); (2) declaratory relief (voiding the contract awarded to Chaparral due to Midpeninsula's failure to comply with state and county competitive bidding requirements); (3) injunctive relief permanently enjoining performance of the contract by Chaparral; (4) promissory estoppel; (5) negligent misrepresentation; (6) negligent infliction of emotional distress; and (7) retaliatory eviction (retaliation for Ashford filing her original complaint alleging Brown Act violations; Civ. Code, § 1942.5, subd. (c).)

   2. Demurrers to First Amended Complaint

Midpeninsula demurred to all causes of action in the first amended complaint on the grounds that it failed to state facts sufficient for any of the causes of action and the trial court lacked subject matter jurisdiction. The demurrers were based in part on facts obtained from documents submitted with Midpeninsula's request for judicial notice, including that Ashford had assumed a month-to-month lease for the Bear Creek Stables in 2015.

With regard to the first cause of action for violation of the Brown Act, Midpeninsula contended that the trial court lacked jurisdiction because Ashford had failed to comply with the Brown Act's prelitigation requirement, set forth at sections 54960.1, subdivision (b) and 54960.2, subdivision (a)(1). Midpeninsula asserted that Ashford had failed to send a cure or correct letter

5

to Midpeninsula that " 'clearly describe[s] the challenged action of the legislative body and the nature of the alleged violation' " as required by sections 54960.1, subdivision (b) and 54960.2, subdivision (a)(1) before filing her original complaint. Midpeninsula explained that Ashford's letter did not provide the required description of the nature of the alleged Brown Act violation. Midpeninsula also argued that Ashford's conclusory allegations of Brown Act violations were insufficient to state a cause of action.

The second cause of action for declaratory relief failed, Midpeninsula argued, because the state and county laws governing competitive bidding did not apply to Midpeninsula and because Ashford had failed to allege a viable Brown Act violation. Midpeninsula argued for the same reasons that the third cause of action failed because Ashford had stated no grounds for injunctive relief.

As to the fourth cause of action for promissory estoppel and the fifth cause of action for negligent misrepresentation, which were both based on alleged misrepresentations, Midpeninsula argued that these claims were barred by section 818.8, which provides absolute immunity to public entities for an employee's negligent misrepresentations. Similarly, Midpeninsula contended that the sixth cause of action for negligent infliction of emotional distress was barred under section 815, which immunizes public entities from claims of common law negligence.

Finally, Midpeninsula argued that Ashford could not state the seventh cause of action for retaliatory eviction because there was another action pending that concerned her eviction: Midpeninsula's unlawful detainer action against Ashford. Alternatively, Midpeninsula argued that the judicially noticeable facts showed that Ashford had filed her original complaint in November 2022, months after Midpeninsula awarded the

6

contract to Chaparral in August 2022 and notified Ashford that her month-to-month tenancy would terminate in December 2022. Therefore, Midpeninsula's decision to remove Ashford as the tenant of Bear Creek Stables was not based on the filing of this action. Midpeninsula also pointed out that section 818 precludes an award of punitive damages against a public entity.

### 3. Trial Court Order Sustaining Demurrers to First Amended Complaint

In a July 7, 2023 order, the trial court sustained Midpeninsula's demurrers to causes of action 1 through 6 without leave to amend. The trial court sustained the demurrer to the seventh cause of action for retaliatory eviction with leave to amend. Additionally, the trial court granted Midpeninsula's request for judicial notice of several Midpeninsula documents pertaining to the RFP and the award of the contract to operate the Bear Creek Stables to Chaparral and documents filed in the instant action and the unlawful detainer action.

The trial court sustained the demurrers to causes of action 1 through 6 on the grounds that all six claims were tied to the insufficiency of Ashford's allegations that Midpeninsula had violated the Brown Act. Taking judicial notice of Ashford's October 28, 2022 "cure or correct" letter to Midpeninsula regarding the alleged Brown Act violation, the trial court ruled that the letter did not comply with the Brown Act's requirement (§ 54960.1) that a prelitigation letter clearly describe the nature of the alleged Brown Act violation so the public entity may correct it.

Specifically, the trial court noted that Ashford's "cure or correct" letter stated that Midpeninsula had violated the Brown Act's open meeting laws because Midpeninsula's decision to award the contract to Chaparral

7

"disregarded the competitive bidding process and the justification for the award of the contract to Chaparral were [*sic*] not properly discussed in an open session of [the Midpeninsula Board of Directors]." The trial court determined that this language in the letter did not provide enough information to allow Midpeninsula to correct any Brown Act error. Further, to the extent Ashford also alleged that Midpeninsula had violated the Brown Act by conducting private discussions, the trial court noted that her "cure or correct" letter did not mention private discussions, and the complaint did not allege that any action was taken during private discussions. Since Ashford had not shown that she could correct these fatal defects in her allegations of Brown Act violations, the trial court sustained the demurrers to causes of action 1 through 6 without leave to amend.

The trial court sustained the demurrer to the seventh cause of action for retaliatory eviction with leave to amend the complaint with respect to the allegations regarding the timing of Ashford's eviction.

4. Second Amended Complaint

Ashford then filed a second amended complaint that included a first cause of action for retaliatory eviction and six new causes of action, although Ashford had not sought leave to file an amended complaint with new causes of action as required by Code of Civil Procedure section 472, subdivision (a).

As to the cause for retaliatory eviction, Ashford alleged that Midpeninsula had retaliated against her for her petitioning activity, consisting of her complaints to Midpeninsula in August and September 2022 that Midpeninsula committed "improprieties" in the selection process for the award of the contract for the Bear Creek Stables, her October 2022 letter complaining of Midpeninsula's Brown Act violations, and her November 2022 original complaint in this matter.

8

According to Ashford, her petitioning activity preceded the 30-day notice of termination of her stable lease that Midpeninsula served in December 2022. Ashford also asserted that the 30-day notice was ineffective because she was entitled to a 60-day notice since the stables were residential property. Based on these allegations, Ashford claimed that Midpeninsula's unlawful detainer action constituted retaliatory eviction.

The new causes of action in the second amended complaint included the second cause of action for violation of the state and federal constitutional guarantees of equal protection, based on Ashford's allegations that she was treated differently than similarly situated applicants for the Bear Creek Stables contract and she had a fundamental vested property right in her "long-running equestrian business at the [s]tables." The third cause of action for violation of constitutional due process was also based on Ashford's allegation that she had a fundamental vested property right in her equestrian business and also was based on her allegation that Midpeninsula did not afford her a full and fair evaluation of her bid to operate the Bear Creek Stables.

In the fourth cause of action for violation of the CPRA, section 6250 et seq., Ashford alleged that she was entitled to a declaration that Midpeninsula had violated the CPRA by failing to respond to her request that Midpeninsula produce all public records relating to the RFP to operate the Bear Creek Stables and the award of the contract to Chaparral.

The fifth cause of action for conversion and the sixth cause of action for replevin were both based on Ashford's new allegations that Midpeninsula had taken possession of equestrian fencing that belonged to her and had refused to return it. In the seventh cause of action for common counts Ashford generally alleged without any specifics that Midpeninsula owed her for

money had and received. Ashford sought a declaration that the contract awarded to Chaparral was void and monetary and punitive damages.

     5.  <u>Demurrers to Second Amended Complaint</u>

At the outset, Midpeninsula argued that its demurrers to all causes of action in the complaint should be sustained without leave to amend on procedural grounds because (1) the trial court's July 7, 2023 order granted leave to amend only the cause of action for retaliatory eviction, and Ashford had failed to obtain leave to amend the complaint with six new causes of action; (2) the proper procedure for challenging a public agency's legislative act of awarding a contract is a petition for writ of mandate under Code of Civil Procedure section 1085, and, in any event, it was judicially noticeable that Midpeninsula's process for awarding the concessionaire agreement for the Bear Creek Stables complied with the applicable rules governing Midpeninsula's award of competitively bid contracts, including Public Resources Code, sections 5594 and 5538; and (3) the new causes of action should be asserted in a supplemental complaint, not an amended complaint pursuant to Code of Civil Procedure section 464, subdivision (a).

Midpeninsula also demurred on the substantive grounds that Ashford failed to state facts sufficient for any cause of action. Regarding the first cause of action for retaliatory eviction, Midpeninsula argued that Ashford had not stated facts sufficient for an allegation of retaliation because it was judicially noticeable that its board of directors' decision to replace Ashford, who had a month-to-month lease, as the concessionaire for Bear Creek Stables was made at the August 24, 2022 board meeting, long before Ashford filed her original complaint in this matter on November 23, 2022.

As to the second cause of action for violation of the state and federal guarantees of equal protection, Midpeninsula contended that Ashford had

10

failed to state sufficient facts because she had not alleged that she was a member of a protected class and had failed to show that she had a vested fundamental right as a tenant to operate the Bear Creek Stables. Midpeninsula contended that there was a rational basis for its decision to award the concessionaire contract to Chaparral since it was judicially noticeable that Midpeninsula's decision was based on the applicable law and the RFP process.

Midpeninsula also argued that Ashford had failed to state facts sufficient for the third cause of action alleging a violation of due process. Specifically, Midpeninsula asserted that procedural due process rights did not attach to a public entity's legislative acts. Further, substantive due process did not apply because Ashford did not have a vested fundamental property right as a tenant to operate the Bear Creek Stables that was infringed upon, and it was judicially noticeable that Midpeninsula's decision and the RFP process were not arbitrary or unfair.

Ashford could not state a fourth cause of action for violation of the CPRA, section 6250 et seq., Midpeninsula argued, because exhibits 3 and 4 to the second amended complaint showed that the public records request to Midpeninsula was made by a third person, not Ashford. Midpeninsula asserted that it is well established that only the person or entity who made the public records request has standing to seek a declaration regarding a public entity's obligation to disclose a document.

Regarding the fifth cause of action for conversion, the sixth cause of action for replevin, and the seventh cause of action for common counts (money had and received), Midpeninsula contended that all three causes of action were barred pursuant to section 815, which abolished public entity liability for common law torts. Alternatively, since the causes of action for

11

conversion, replevin, and common counts all arose from Ashford's claim that Midpeninsula had refused to return her equestrian fencing, Midpeninsula argued that these were moot because the stipulation in the unlawful detainer action resolved ownership of the fencing and the trial court in that action had retained jurisdiction to enforce the stipulation. Alternatively, Midpeninsula asserted that these causes of action, along with the cause of action for retaliatory eviction, were barred because Ashford had failed to present a timely written claim for money or damages to Midpeninsula, as required by sections 911.2 and 945.4.

6. <u>Opposition to Demurrers to Second Amended Complaint</u>

Regarding Midpeninsula's contention that her second amended complaint was barred on procedural grounds, Ashford argued that she properly added causes of action 5, 6, and 7, which concerned the equestrian fencing, since her claims regarding the equestrian fencing did not arise until after the second amended complaint was filed. Ashford also argued that her new constitutional claims were intertwined with her claim for retaliatory eviction and therefore were also properly included in the second amended complaint. Alternatively, Ashford requested the trial court consider her opposition as a request for permission to file the second amended complaint.

Ashford also argued that she had stated facts sufficient for all causes of action in the second amended complaint. Although Ashford acknowledged that she had raised retaliatory eviction as a defense in the unlawful detainer action that has since been resolved, she argued that she could nevertheless maintain her properly pleaded first cause of action for retaliatory eviction in the present case.

Regarding the second cause of action for violation of equal protection, Ashford maintained that she had stated sufficient facts for that cause of

12

action because she is a woman and "a strong inference deduced from the [second amended complaint]'s allegations is that non-female stable operators, who are also acquaintances with [Midpeninsula] will receive stable operating contracts from [Midpeninsula]." Ashford also contended that she had a vested interest in continuing to operate the Bear Creek Stables.

According to Ashford, she stated facts sufficient for the third cause of action for denial of procedural due process, since she alleged that she had a property interest, the RFP process was deficient and discriminatory, and she had lost her business.

As to the fourth cause of action for violation of the CPRA, Ashford argued that the CPRA provides that any person may make a public records request, and therefore Ashford could enforce the inspection request to Midpeninsula made by a third person who was her customer and a boarder at the Bear Creek Stables.

Further, Ashford generally argued that she had submitted claims to Midpeninsula that satisfied the claims presentation requirements of section 810. Ashford also contended that there was no governmental immunity for conversion, and her fifth cause of action for conversion, sixth cause of action for replevin, and seventh cause of action for replevin were sufficiently pleaded.

7. Trial Court Order Sustaining Demurrers to Second Amended Complaint

In an order filed on December 15, 2023, the trial court sustained the demurrers to all causes of action in the second amended complaint without leave to amend and granted Midpeninsula's request for judicial notice. The trial court stated that Ashford had not sought leave to amend her complaint with the new causes of action and the demurrers could be sustained on that

13

ground alone. However, the trial court proceeded to rule on the merits as to Midpeninsula's demurrers to the new causes of action.

Regarding the first cause of action for retaliatory eviction, the trial court determined that Ashford had failed to state facts sufficient for that cause of action despite being granted leave to amend. The trial court ruled that the allegations failed "to overcome the indisputable judicially noticeable facts that (1) she was a month to month tenant that could have been asked to leave at any time for any reason before [Midpeninsula] awarded the concessionaire contract to Chaparral and (2) her complaints to [Midpeninsula] came after it awarded the contract to Chaparral, which award necessarily involved Ashford vacating the premises. To be clear: [Midpeninsula] effectively told Ashford she would have to leave the premises at the same time it told her the contract was being given to Chaparral, which was before she made any of her complaints which she claims led to a retaliatory eviction." (Italics omitted.)

The trial court also ruled that Ashford had failed to state facts sufficient for the second cause of action for violation of the constitutional guarantees of equal protection. During argument at the hearing on the demurrers, the trial court confirmed that Ashford did not claim that she was a member of a protected class. The court also ruled that Ashford had failed to allege that she was treated differently than other applicants and that "the Constitution does not provide [Ashford] with a vested right to win a contract in an open bidding process." Similarly, the trial court ruled that Ashford had failed to state facts sufficient for the third cause of action for denial of due process, since she was a month-to-month tenant and had provided no authority to support her claim that a long period of tenancy created a constitutional right to maintain her tenancy.

14

As to the fourth cause of action for violation of the CPRA section 6250 et seq., the trial court ruled that Ashford had failed to overcome the judicially noticeable fact that she had not made a public records request to Midpeninsula, stating that the CPRA does not authorize enforcement of one person's inspection rights by another.

Finally, the trial court ruled that Midpeninsula, as a governmental body, was immune from liability for the fifth cause of action for conversion, the sixth cause of action for replevin, and the seventh cause of action for common counts pursuant to section 815, since those causes of action were not based on a statute. Additionally, the trial court determined that Ashford's claims with regard to Midpeninsula's alleged retention of her equestrian fencing should be addressed to the trial court in the unlawful detainer action, since the parties had entered a stipulation in the unlawful detainer action that addressed removal and ownership of the equestrian fencing and the court retained jurisdiction to enforce the stipulation.

Based on these rulings, the trial court sustained Midpeninsula's demurrers to all causes of action in the second amended complaint without leave to amend. The judgment dismissing the second amended complaint was filed on January 9, 2024.

## II. DISCUSSION

On appeal, Ashford contends that the trial court erred in sustaining the demurrer to the first cause of action for violation of the Brown Act in the first amended complaint without leave to amend. Ashford also contends that the trial court erred in sustaining the demurrers to the causes of action in the second amended complaint, including the first cause of action for retaliatory eviction, the second cause of action for violation of the constitutional guarantees of equal protection, the third cause of action for violation of the

15

constitutional guarantee of due process, the fifth cause of action for conversion, the sixth cause of action for replevin, and the seventh cause of action for common counts. Ashford does not seek review of the trial court's order sustaining the demurrer to the fourth cause of action for violation of the CPRA.

We begin our evaluation of the contentions on appeal with the standard of review applicable to a judgment of dismissal based upon an order sustaining demurrers without leave to amend. Since the record reflects that the trial court implicitly granted Ashford's oral request to treat her opposition to the demurrers to the second amended complaint as a request for leave to amend the first amended complaint with the new causes of action, we will review Ashford's contentions of trial court error as to the second amended complaint.

*A. Standard of Review*

We apply de novo review of an order of dismissal after a demurrer is sustained without leave to amend. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) In performing our independent review of the complaint, we assume the truth of all facts properly pleaded by the plaintiff. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 (*Evans*).)

Additionally, "we give the complaint a reasonable interpretation, and read it in context." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).) However, we do not assume the truth of " ' "contentions, deductions or conclusions of fact or law." ' " (*Evans*, supra, 38 Cal.4th at p. 6.) We may also consider matters that are subject to judicial notice and facts appearing in any exhibits attached to the complaint. (Code Civ. Proc, § 430.30, subd. (a); *Schifando*, at p. 1081.)

16

The California Supreme Court has instructed that " ' "[a] complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective." [Citation.]' [Citation]; see Code Civ. Proc., § 430.30, subd. (a).)" (*Evans*, *supra*, 38 Cal.4th at p. 6.) Judicial notice may be taken of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (Evid. Code, § 452, subd. (h).) "[W]hen the allegations of the complaint contradict or are inconsistent with such facts, we accept the latter and reject the former." (*Blatty v. New York Times Co.* (1986) 42 Cal.3d 1033, 1040 (*Blatty*).) However, "[w]hen judicial notice is taken of a document . . . the truthfulness and proper interpretation of the document are disputable." (*StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 457, fn. 9.)

### B. Brown Act

Ashford contends that the trial court erred in sustaining the demurrer to the first cause of action for violation of the Brown Act in the first amended complaint because the allegations were sufficient to give notice of the claimed Brown Act violations. Ashford also argues that her cure or correct letter satisfied the section 54960.1 criteria for a prelitigation demand.

Midpeninsula responds that Ashford's cure or correct demand letter was inadequate because it did not provide the required description of the alleged Brown Act violations. Alternatively, Midpeninsula asserts that the allegations of Brown Act violations are conclusory and therefore insufficient to state a cause of action.

The Brown Act "provides that all meetings of 'the legislative body of a local agency shall be open and public,' except as otherwise provided in the

Act. (§ 54953.)" (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1992) 6 Cal.4th 821, 823.)

"A person alleging a legislative body has violated the open meeting requirements of section 54953 may bring suit to have an action taken in violation of section 54953 declared null and void. Specifically, section 54960.1, subdivision (a) states, 'The district attorney or any interested person may commence an action by mandamus or injunction for the purpose of obtaining a judicial determination that an action taken by a legislative body of a local agency in violation of [s]ection 54953 [or other enumerated provisions] . . . is null and void under this section.' (§ 54960.1, subd. (a).)" (*Burton v. Campbell* (2024) 106 Cal.App.5th 953, 962, fn. omitted (*Burton*).)

"However, as set forth in section 54960.1, subdivision (b), before suit is filed, a demand to cure and correct must be made: 'Prior to any action being commenced pursuant to subdivision (a), the district attorney or interested person shall make a demand of the legislative body to cure or correct the action. . . . The demand shall be in writing and clearly describe the challenged action of the legislative body and nature of the alleged violation.' (§ 54960.1, subd. (b).)" (*Burton*, *supra*, 106 Cal.App.5th at p. 962.) The prerequisite of a written demand to cure or correct allows the legislative body to cure or correct violations of the Brown Act's opening meeting requirements and thereby obtain dismissal of the action alleging the violations. (§ 54960.1, subd. (e).)

Thus, " '[t]o state a cause of action, a complaint based on [section] 54960.1 must allege: (1) that a legislative body of a local agency violated one or more enumerated Brown Act statutes; (2) that there was 'action taken' by the local legislative body in connection with the violation; and (3) that before commencing the action, plaintiff made a timely demand of the legislative

18

body to cure or correct the action alleged to have been taken in violation of the enumerated statutes, and the legislative body did not cure or correct the challenged action.' " (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 684.)

In the present case, Ashford attached the October 28, 2022 letter to Midpeninsula with her demand to cure or correct Brown Act violations as an exhibit to her first amended complaint. In pertinent part, the letter states: "This letter is to call your attention to what my client, Pamela Ashford, believes was a substantial violation of a central provision of the Ralph M. Brown Act, one which may jeopardize the finality of the action taken by [Midpeninsula]. In its meetings of September 24, 2022, October 26, 2022 and August 24, 2022, the [b]oard of [d]irectors for [Midpeninsula] awarded a public contract for the operation of a 'qualified horse stable [c]oncessionaire to provide horse stable management and equestrian programs at Bear Creek Redwoods Stable Facility . . . to Chaparral County Corporation. [¶] In so doing, [Midpeninsula] took 'action' as defined in [Government] Code [section] 54952.6 . . .. The action violated the Brown Act because it disregarded the competitive bidding process and the justification for the award of the contract to Chaparral were not properly discussed in an open session of [Midpeninsula] and/or [b]oard of [d]irectors." (Italics omitted.)

We agree with the trial court that the October 28, 2022 letter did not satisfy the statutory prerequisite of a written demand to cure or correct because the letter does not "clearly describe the challenged action of the legislative body and nature of the alleged violation." (§ 54960.1, subd. (b).) The letter claims that Midpeninsula violated of the Brown Act's open meeting requirements because the board of directors (1) disregarded the competitive bidding process; and (2) "the justification for the award of the contract to

Chaparral were not properly discussed in an open session of [Midpeninsula] and/or [b]oard of [d]irectors." However, these two claims do not satisfy the section 54960.1, subdivision (b) requirement for a prelitigation demand letter.

First, the claimed disregard of the competitive bidding process does not describe a violation of the Brown Act's open meeting requirements. Second, the phrase "the justification for the award of the contract to Chaparral was not properly discussed in an open session" is vague and does not inform Midpeninsula how to cure or correct the alleged lack of a proper discussion of the decision to award the contract to Chaparral.

Since the October 28, 2022 letter does not clearly describe the nature of Brown Act violations such that Midpeninsula would have been able to correct the violations, the letter does not satisfy the section 54960.1, subdivision (b) prerequisite of a prelitigation demand to cure or correct. Accordingly, Ashford failed to state facts sufficient for a cause of action alleging a violation of the Brown Act opening meeting requirements, and the trial court did not err in sustaining the demurrer to that cause of action without leave to amend.

C. *Retaliatory Eviction*

The trial court sustained the demurrer to the first cause of action in the second amended complaint for retaliatory eviction because it was judicially noticeable that on August 24, 2022, Midpeninsula "effectively told Ashford she would have to leave the premises at the same time it told her the contract was being given to Chaparral, which was before she made any of her complaints which she claims led to a retaliatory eviction."

Ashford contends that the trial court erred because she alleged the "necessary elements" of a cause of action for retaliatory eviction. Midpeninsula disagrees, arguing that the judicially noticeable facts show

that Midpeninsula made the decision to replace Ashford as the concessionaire for the Bear Creek Stables "well in advance" of the filing of the instant action and the unlawful detainer action.

"The retaliatory eviction doctrine is founded on the premise that '[a] landlord may normally evict a tenant for any reason or for no reason at all, but he may not evict for an improper reason.' " (*Barela v. Superior Court* (1981) 30 Cal.3d 244, 249.)  Retaliatory eviction may be asserted as a cause of action as well as a defense in an unlawful detainer action.  (*Rich v. Schwab* (1998) 63 Cal.App.4th 803, 810.)

Ashford alleges that Midpeninsula evicted her in retaliation for complaining in August and September 2022 that Midpeninsula had committed "improprieties" in the selection process for the award of the contract for the Bear Creek Stables, sending an October 2022 letter complaining of Midpeninsula's Brown Act violations, and filing the November 2022 original complaint in this matter.  However, Ashford has not overcome the judicially noticeable fact that Midpeninsula's August 24, 2022 decision to select Chaparral as the concessionaire for the Bear Creek Stables necessarily included the termination of Ashford's month to month tenancy as interim stable manager.  Despite being given the opportunity to amend the cause of action for retaliatory eviction, Ashford has failed to allege that she made any complaints to Midpeninsula, claimed Brown Act violations, or filed a lawsuit against Midpeninsula prior to Midpeninsula's decision to choose Chaparral as the new concessionaire for the Bear Creek Stables.  Accordingly, we decide that the trial court did not err in sustaining Midpeninsula's demurrer to the first cause of action for retaliatory eviction without leave to amend because Ashford has not, and cannot, allege her tenancy was terminated due to retaliation by Midpeninsula.

D. *Equal Protection*

The trial court sustained the demurrer to the second cause of action in the second amended complaint for violation of the constitutional right to equal protection on the ground that Ashford had failed to allege that she was treated differently than other applicants and "the Constitution does not provide [Ashford] with a vested right to win a contract in an open bidding process."

According to Ashford, the trial court erred because the allegations in the second amended complaint are sufficient since "a strong inference deduced from the [second amended complaint]'s allegations is that non-female stable operators, who are also acquaintances with [Midpeninsula], will receive stable operating contracts from [Midpeninsula]." Ashford also maintains that she has sufficiently alleged disparate treatment due to her gender allegations throughout the second amended complaint.

Midpeninsula responds that Ashford has not stated facts sufficient for a cause of action for violation of the right to equal protection because she has not alleged that she received unequal treatment based on her membership in a protected class.

The federal equal protection clause (U.S. Const., 14th Amend.) and the California equal protection clause (Cal. Const., art. I, § 7, subd. (a)) both provide that all persons similarly situated should be treated alike. (See *Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 439.) " 'Equal protection challenges typically involve claims of discrimination against an identifiable class or group of persons. The United States Supreme Court in *Village of Willowbrook v. Olech* (2000) 528 U.S. 562, 564 . . ., however, held that a plaintiff who does not allege membership in a class or group may state

a claim as a " 'class of one.' " ' " (*California Resources Production Corp. v. Antioch City Council* (2025) 107 Cal.App.5th 481, 489–490.)

"To succeed on a class of one claim, a plaintiff must establish that '(1) the plaintiff was treated differently from other similarly situated persons, (2) the difference in treatment was intentional, and (3) there was no rational basis for the difference in treatment.' " (*Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2017) 3 Cal.5th 1118, 1144.)

In her second amended complaint, Ashford alleges that Midpeninsula violated her constitutional right to equal protection because a "dispute between Ashford and [Midpeninsula] resulted in [Midpeninsula] treating Ashford differently from similarly situated applicants in the RFP process for the [c]ontract at the [s]tables." On appeal, Ashford additionally argues that her allegations are sufficient to permit an inference that she was treated differently than other similarly situated applicants for the Bear Creek Stables concessionaire contract due to her female gender. Ashford further contends that she is a female and therefore a member of a protected class, and it may be inferred that non-female stable operators will receive stable operating contracts from Midpeninsula.

We decide that these allegations are insufficient to state a cause of action for violation of the constitutional right to equal protection. The allegations of disparate treatment and gender discrimination are either wholly conclusory or rely on conclusory allegations from which a reasonable inference of disparate treatment cannot be drawn. Ashford fails to specifically allege any disparate treatment or gender discrimination that caused her to be ranked second in the selection process for the Bear Creek Stables concessionaire contract. (See *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 883 [court assumes truth of reasonable

23

allegations]; *Evans*, *supra*, 38 Cal.4th at p. 6 [court does not assume the truth of conclusions of fact].)

For these reasons, we decide that the trial court did not err in sustaining the demurrer to the second cause of action for violation of the constitutional right to equal protection.

E.  *Denial of Due Process*

The trial court ruled that Ashford had failed to state facts sufficient for the third cause of action in the second amended complaint for denial of due process, since she was a month-to-month tenant and had provided no authority to support her claim that a long period of tenancy created a constitutional right to maintain her tenancy.  The court sustained Midpeninsula's demurrer without leave to amend.

On appeal, Ashford contends that the trial court erred because she pleaded a valid cause of action for violation of the constitutional right to due process since she had "a vested property interest in the continued operation of the [s]tables."

Midpeninsula responds that procedural due process does not attach to legislative acts, including a public entity's award of a contract.  As to substantive due process, Midpeninsula argues that Ashford cannot state a claim for violation of the constitutional right to substantive due process because there is no authority for the proposition that Ashford had a fundamental right to prevail in Midpeninsula's RFP process and continue her stable business on leased public property.

We agree with Midpeninsula that Ashford cannot state a cause of action for violation of the constitutional right to procedural due process.  As this court has stated, " 'only those governmental decisions which are adjudicative in nature are subject to procedural due process principles.

24

Legislative action is not burdened by such requirements.' [Citation.] While an adjudicative governmental action often 'requires the procedural due process standards of reasonable notice and opportunity to be heard[,] . . . [l]egislative action generally is not governed by these procedural due process requirements because it is not practical that everyone should have a direct voice in legislative decisions.' " (*Hobbs v. City of Pacific Grove* (2022) 85 Cal.App.5th 311, 322 (*Hobbs*).) "A public entity's 'award of a contract, and all of the acts leading up to the award, are legislative in character.' " (*Mike Moore's 24-Hour Towing v. City of San Diego* (1996) 45 Cal.App.4th 1294, 1303.)

Turning to Ashford's claim based on substantive due process, "[t]he ' "substantive" ' component of the due process clause protects rights that 'are "so rooted in the traditions and conscience of our people as to be ranked as fundamental," and therefore cannot be deprived without compelling justification.' " (*Hobbs*, *supra*, 85 Cal.App.5th at p. 326, quoting *Obergefell v. Hodges* (2015) 576 U.S. 644, 694–695.) "[C]ases both before and after [*County of Sacramento v. Lewis* (1998) 523 U.S 833] have affirmed . . ., the principle that the arbitrary government conduct that triggers a substantive due process violation is not ordinary government error but conduct that is in some sense outrageous or egregious—a true abuse of power." (*Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1032.)

*Benn v. County of Los Angeles* (2007) 150 Cal.App.4th 478 (*Benn*) is instructive to our evaluation of whether Ashford has stated facts sufficient for a cause of action for violation of substantive due process. In *Benn*, the plaintiff Angelica Group Homes, a nonprofit corporation, entered into contracts with the County of Los Angeles to provide group home foster care. (*Id*. at p. 484.) After conducting audits that revealed a number of

25

deficiencies, the County of Los Angeles placed Angelica Group Homes on "Do Not Refer" status pursuant to the terms of the parties' contract. (*Id.* at pp. 484–486.) Angelica Group Homes then brought an action against the County of Los Angeles that "alleged violations of substantive due process by the County's arbitrary and capricious action in imposing the 'Do Not Refer' directive, thereby depriving [Angelica Group Homes] of its protected property interest in its contracts with the County." (*Id.* at p. 487.)

On appeal from summary judgment, the *Benn* court rejected Angelica Group Homes' contention that "its contracts with the County gave it a reasonable expectation of an entitlement to continued foster children placements and thus a protected property interest in continued funding from the County." (*Benn, supra*, 150 Cal.App.4th at p. 489.) The court ruled that " '[t]wo general types of contract rights are recognized as property protected under the Fourteenth Amendment: (1) where "the contract confers a protected status, such as those 'characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits' "; or (2) where "the contract itself includes a provision that the state entity can terminate the contract only for cause.' " (*Id.* at p. 490.)

The *Benn* court concluded that Angelica Group Homes did not have a protected property right in its contracts with the County of Los Angeles because "[Angelica Group Homes] had a contract to supply services to the County. Neither the contract's subject matter nor its terms provide the requisite degree of permanence as a contract for tenure or employment for a term of years might. Most significantly, the contract contains no provision stating it could only be terminated for cause." (*Benn, supra*, 150 Cal.App.4th at p. 490, fn. omitted.)

26

We reach a similar conclusion in the present case. In 2015, Midpeninsula's board of directors approved the assignment of the Bear Creek Stables month-to-month rental agreement to Ashford as the interim manager of the stables. The terms of Ashford's rental agreement were therefore temporary and could not confer a degree of permanence or a quality of extreme dependence. (See *Benn*, *supra*, 150 Cal.App.4th at p. 490.) Accordingly, Ashford cannot state a cause of action for violation of substantive due process based on her rental agreement with Midpeninsula.

Ashford's reliance on the decision in *Goat Hill Tavern v. City of Costa Mesa* (1992) 6 Cal.App.4th 1519 (*Goat Hill*) is misplaced. The issue in *Goat Hill* was whether the owner of the Goat Hill Tavern had a vested fundamental right to continue to operate the tavern that the City of Costa Mesa violated when it denied the owner's application for renewal of the tavern's conditional use permit. (*Id*. at p. 1522.) The appellate court ruled that "[b]y simply denying renewal of its conditional use permit, the city destroyed a business which has operated legally for 35 years. The action implicates a fundamental vested right of the property owner." (*Id*. at p. 1531.)

However, the appellate court also stated that "[t]he grant or denial of a conditional use permit is an administrative or quasi-judicial act." (*Goat Hill*, *supra*, 6 Cal.App.4th at p. 1525.) The decision in *Goat Hill* is therefore distinguishable since the underlying facts did not involve a public entity's legislative act in awarding a contract, as was the case here. Moreover, the appellate court emphasized that the Goat Hill Tavern had operated legally for 35 years, in contrast to Ashford's temporary operation of the Bear Creek Stables on a month-to-month lease as interim manager.

Accordingly, we decide that the trial court did not err in sustaining the demurrer to the third cause of action for denial of due process without leave to amend.

### F. Conversion, Replevin, and Common Counts

Ashford contends that the trial court erred in sustaining the demurrers to the fifth cause of action for conversion, the sixth cause of action for replevin, and the seventh cause of action for common counts on the grounds that Midpeninsula, as a governmental body, was immune from liability pursuant to section 815. According to Ashford, her claims are not barred by section 815 because she alleges that Midpeninsula has wrongfully taken her equestrian fencing for a public use in violation of the takings clause. (Cal. Const., art I, § 19.) Ashford also contends that the trial court erred in sustaining the demurrer on the alternative ground that the parties had entered a stipulation in the unlawful detainer action that addressed removal of the equestrian fencing.

Midpeninsula maintains that the trial court did not err in ruling that Midpeninsula has governmental immunity from liability for common law torts pursuant to section 815, including conversion, common counts, and replevin. Additionally, Midpeninsula argues that since the causes of action for conversion, common counts, and replevin all derive from Ashford's allegations regarding the equestrian fencing, the trial court properly ruled that these claims were resolved by the parties' stipulation in the unlawful detainer action, and, in any event, the stipulation has rendered Ashford's claims moot because she left the equestrian fencing in place after the time stipulated for removal.

On appeal, Ashford concedes that her "conversion-related claims apply to [Midpeninsula]'s wrongful taking of Ashford's equestrian fencing at the

28

[s]tables." The concession is significant because the parties' May 19, 2023 stipulation and order in the unlawful detainer action, of which the trial court took judicial notice, included Ashford's agreement to remove her personal property, including her equestrian fencing, as follows: "The schedule for removal of [Ashford]'s personal property from the [s]ubject [p]roperty shall be restricted to the following dates and times: June 3, 4, 10 and 11, during the hours of 9:00 [a.m.] through 5:00 [p.m.], except as this schedule is modified by prior written agreement between the parties. With respect to removal of the metal pipe panel fencing, [Ashford] shall notify [Midpeninsula] in advance by email at least 24 hours of its removal. The email addresses for purposes of this notification are . . .."

The stipulation and order in the unlawful detainer action also included Ashford's agreement that "[a]ny of [Ashford]'s personal property that remains at the [s]ubject [p]roperty after June 15, 2023, shall be deemed [Midpeninsula]'s property." The stipulation further provided that "[t]he [c]ourt shall retain jurisdiction over the parties to enforce the [s]tipulation herein until performance in full of its terms pursuant to Code of Civil Procedure section 664.6."

Thus, it is a judicially noticeable fact that Ashford stipulated that she would remove the equestrian fencing from Bear Creek Stables by June 15, 2023, and that if she failed to do so, the fencing would become the property of Midpeninsula. Ashford filed the second amended complaint in July 2023 alleging that Midpeninsula had refused her access to recover her equestrian fencing. But Ashford's pleading is notably silent as to whether the alleged denial of access was before the deadline (when the stipulation permitted Ashford to recover the fencing) or after the deadline (when the stipulation entitled Midpeninsula to keep it). Although an amendment might at least in

29

theory cure this defect, Ashford's counsel conceded at oral argument that the alleged denial of access occurred only after the stipulated deadline of June 15, 2023.  The allegations are also inconsistent with the fact that Ashford stipulated that the remedy for enforcing the terms of the stipulation, such as Midpeninsula's alleged refusal to return the equestrian fencing, would be to return to the trial court in the unlawful detainer action.

Our standard of review provides that judicial notice may be taken of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (Evid. Code, § 452, subd. (h).)  "[W]hen the allegations of the complaint contradict or are inconsistent with such facts, we accept the latter and reject the former." (*Blatty*, *supra*, 42 Cal.3d at p. 1040.)  Since Ashford's allegations in the July 2023 second amended complaint—that Midpeninsula has refused to return the equestrian fencing— are inconsistent with the terms of the stipulation and order in the unlawful detainer action that are not reasonably subject to dispute, we accept as fact that the equestrian fencing would become Midpeninsula's property in June 2023 if not removed.  (See *ibid.*)

We decide that the trial court did not err in sustaining the demurrer to the fifth cause of action for conversion, the sixth cause of action for replevin, and the seventh cause of action for common counts.  We are not persuaded by Ashford's argument that unlawful detainer actions have only limited res judicata effect.  We have not decided that these causes of action are subject to demurrer on the ground of res judicata; instead, we conclude that the allegations that Midpeninsula refused to return the equestrian fencing are inconsistent with Ashford's stipulations in the unlawful detainer action pertaining to the equestrian fencing that are not reasonably subject to

30

dispute. Having reached this conclusion, we need not address Midpeninsula's contention that these causes of action are barred by governmental immunity pursuant to section 815.

G. *Leave to Amend*

Where, as here, the trial court did not grant leave to amend, we review that ruling for abuse of discretion. (*Schifando*, *supra*, 31 Cal.4th at p. 1081.) "The plaintiff has the burden of proving that an amendment would cure the defect." (*Ibid*.) "[L]eave to amend is properly granted where resolution of the legal issue[] does not foreclose the possibility that the plaintiff may supply necessary factual allegations. [Citation.] If the plaintiff has not had an opportunity to amend the complaint in response to the demurrer, leave to amend is liberally allowed as a matter of fairness, unless the complaint shows on its face that it is incapable of amendment." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747.)

We have concluded that the trial court properly sustained the demurrers of Midpeninsula to the causes of action in the second amended complaint. We further conclude that the trial court did not abuse its discretion in denying leave to amend. In the absence of any argument in support of her request for leave to amend, Ashford has not met her burden to show how the complaint could be amended to cure its defects. (*Schifando, supra*, 31 Cal.4th at p. 1081.)

### III. DISPOSITION

The July 7, 2023 order sustaining the demurrers to causes of action 1 through 6 in the first amended complaint without leave to amend is affirmed. The January 9, 2024 judgment dismissing the second amended complaint is affirmed. Costs on appeal are awarded to respondent.

31

_____
Danner, Acting P. J.

WE CONCUR:




_____
Lie, J.




_____
Wilson, J.




**H051856**
***Ashford v. Midpeninsula Regional Open Space District***